U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 2 2 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BOBBY JOE ALEXANDER,<br>Institutional ID. No. 28475-077, | ) ) ) | |
| Movant, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO.<br>5:07-CV-106-J |
| The United States of America, | ) ) ) ) | ECF |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Petitioner Bobby Joe Alexander, an inmate in a federal corrections facility, brings a motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Alexander's motion addresses sentencing entered in Cause Number 5:05-CR-013-J in which he pleaded guilty to violating 18 U.S.C. § 875(c), transmitting threatening interstate communication, and was sentenced to serve sixty months imprisonment and three years supervised release. The United States District Court referred the matter to the undersigned United States Magistrate Judge, and the undersigned now files this Report and Recommendation. After considering the motion and the applicable law, the undersigned is of the opinion that the motion is without merit and recommends that the United States District Court deny the motion.

I. **Factual and Procedural History**

On February 9, 2005, a federal grand jury indicted Alexander on three counts of criminal activity. The charges stemmed from allegations that Alexander made a telephone call on January 24, 2005, during which he threatened to kill United States District Judge Sam R. Cummings and a Lubbock County deputy sheriff. Alexander pleaded not guilty and was detained. On April 12, 2005, the court ordered that Alexander undergo psychiatric or psychological examination to determine (1) his competency to stand trial; (2) whether he was suffering from a severe mental disease or defect at the time of the commission of the alleged crimes; and (3) whether there was any mental disease or other mental condition that would bear on the issue of his guilt.[1] Alexander underwent examination by Maureen Burris, Ph.D., a forensic psychologist. On March 3, 2006, the court held a competency hearing and determined, after reviewing Dr. Burris' report and hearing the arguments of counsel, that Alexander was able to understand the nature and consequences of the proceedings against him and to assist in his defense and that he was competent to stand trial.

On April 4, 2006, Alexander entered a plea of guilty as to count three of the indictment against him. The court accepted the plea and subsequently entered judgment and sentenced Alexander.

---

1

Prior to the court's order Alexander filed notice that he would present a defense of insanity and filed a motion for psychiatric and psychological examination. A few days later, Alexander filed a motion to withdraw his motion for psychiatric and psychological examination, and his motion was granted. Thereafter, the United States filed a motion seeking psychiatric or psychological testing of Alexander on issues of competency to stand trial and insanity at the time of the commission of the offenses.

## II. Alexander's Grounds for the Motion

Alexander argues that (1) he was convicted despite the fact that he suffered from a mental disorder; (2) Dr. Burris' findings were based on perjured testimony; and (3) he was denied effective assistance of counsel.

## III. Alexander's Factual Allegations

Alexander alleges the United States and Officer (FNU) Greve, a corrections officer at the Lubbock County Jail, are responsible for his actions. He claims that when he was incarcerated in the Lubbock County Jail in the 1990s, a dentist implanted a device in his jaw that serves as a wireless tracking device, a telepathic mind control device, and a conduit through which Officer Greve can torture him. He claims there is a control device in Lubbock, Texas, from which Officer Greve transmits his words to the device in Alexander's jaw and to his brain for the purpose of harassing him and from which Officer Greve can hear all of Alexander's words, thoughts, and dreams, and can record songs from his mind and play them back in Alexander's mind at full volume. He also claims Officer Greve uses the devices to force upon him torments such as vomiting, diarrhea, and constipation; to cause him to suffer extreme heat and shocks to his brain by electrode zaps; to cause him to experience nervousness, paranoia, and stupidity; and to transmit tortuous noises to his brain such as the sound of aircraft engines, telephone rings, and static electricity. He claims Officer Greve does these things to control him and to threaten him and to force him to endure

imprisonment. He claims other individuals know of Officer Greve's actions, and he believes there is a conspiracy against him.

Alexander claims that he told a correctional officer in New Mexico about the mind control devices and the officer told him to seek help at a hospital and that he told the officer that there were no hospitals in New Mexico equipped to handle his problem. He claims he nonetheless sought help at a hospital and that he was referred to the mental services department. He claims he thereafter contacted a United States Marshal in Lubbock, Texas, and that he was again advised to seek help at a hospital. He claims that on January 24, 2005, the day he made the threatening calls that resulted in the sentence he now challenges, he was drinking alcohol, taking Ritalin and Elavil, and was under the influence of Officer Greve's "telepathic mind control." He claims he called a physician who had provided him with medical treatment during his incarceration at the Lubbock County Jail and asked him to tell him what was done to him at the jail. The physician told him he would not have done anything to hurt him and advised him to seek help at a hospital. Alexander claims he made a telephone call to the chambers of Judge Sam R. Cummings and told the Judge's secretary about the computer chip in his brain and asked to speak to the Judge about what Officer Greve had done to him. Alexander claims he became angry at something the Judge's secretary said and that he "lost it," began drinking heavily, and made the threatening telephone calls.

Alexander sets forth a number of claims and arguments. He complains of the findings and conclusions of Dr. Burris, the examining psychologist. He complains of her finding that

he did not suffer from a mental defect and was not suffering from involuntary interference, of her report that he was malingering, and her assertion that he had tried to sway the legal system with his allegations regarding the telepathic mind control devices. He claims Dr. Burris "made up lies" in her report, relied on reports from other psychiatrists, and that her report is based on fraud and perjury. He claims he told Dr. Burris that he was sniffing Ritalin on the day he made the threatening phone calls but that she did not advise the court that Ritalin could have affected his judgment.[2]

In regard to his ineffective assistance of counsel claim, he claims he was initially represented by Assistant Federal Public Defender David Sloan, that he was transferred to Los Angeles, California, where he remained for 120 days before Dr. Burris evaluated him, and that he was transferred to Dickens County Correctional Center in Spur, Texas, after the examination and remained there for four months. He claims Mr. Sloan never came to see him at the Dickens County Correctional Center and did not review the psychological evaluation with him. Alexander claims United States Marshals took him to the Amarillo County Jail and that Bonita L. Gunden, an Assistant Federal Public Defender in the Amarillo Division, represented him thereafter. He complains that Gunden worked a heavy caseload,

---

[2] Alexander more specifically claims Dr. Burris referred to psychological evaluations other physicians conducted ten years ago. He claims Dr. Burris lied about things he told her; he claims she falsely reported that he tried to get his sisters to help him with his homework, that he drank beer to the point of "black out," and that he went to a number of physicians to obtain Ritalin. He also complains that Dr. Burris did not believe him when he told her that he suffers from brain seizures and involuntary interference in his brain; that she wrongly believes he is malingering and that he is attempting to sway the legal system by saying he has a chip in his brain; and that she reported that he had a long history of playing games with authority figures. He disputes her report that he suffered from anti-social personality and that drinking "alcohol and my long-standing antisocial behavior and criminal thinking was my motivation."

accepted the findings in Dr. Burris' psychological report, and advised him to plead guilty.

IV. **Standard**

The court may deny a motion brought under 28 U.S.C. § 2255 without a hearing if the motion, files, and records of the case conclusively show that the movant is entitled to no relief. 28 U.S.C. § 2255; *United States v. Walker,* 68 F.3d 931, 934 (5th Cir. 1995) (an evidentiary hearing is not necessary if, on the record, it can be concluded as a matter of law that the movant cannot prove an element necessary to establish an ineffective assistance of counsel claim); *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir. 1992) (disposing of a § 2255 motion related to competency to enter plea and ineffective assistance of counsel without a hearing); *see also Hill v. Lockhart,* 474 U.S. 52, 60 (1985) (holding that the district court did not err in declining to hold a hearing on ineffective assistance of counsel claim because the petitioner had failed to allege element necessary to support his claim). In this case the allegations in Alexander's motion as well as the files and records of the case conclusively show that he is entitled to no relief.

V. **Discussion**

   A. *Claim of Incompetency*

Alexander states that "Dr. Burris found me competent to stand trial and Dr. Burris claims I was not suffering from a mental defect off perjured testimony." Because Alexander entered a plea of guilty rather than proceeding to trial, the court construes his statement to be that Dr. Burris' findings were unreliable and that he was not competent to enter a guilty plea.

Due process considerations prohibit the conviction of an individual who is mentally incompetent. *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000). The test for determining competency to stand trial turns on whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *See Dusky v. United States*, 362 U.S. 402, (1960); *see also Godinez v. Moran*, 509 U.S. 389, 396 (1993) (applying the standard from *Dusky* to guilty pleas). Thus, the district court must hold a competency hearing when there is reasonable cause for believing the defendant may be incompetent to understand the proceedings against him. *United States v. Dockins*, 986 F.2d 888, 893 (5th Cir. 1993) (citations omitted).

In this case, the district court ordered psychological testing and held a competency hearing. Alexander has not alleged error at the competency hearing, and he has not alleged that he was unable to consult with his attorney with a reasonable degree of rational understanding or that he did not have a rational and factual understanding of the proceedings against him. Nor has he alleged that he is innocent of the crime for which he pleaded guilty or that he was coerced or entered his plea involuntarily. And his plea is substantiated by statements in his § 2255 motion.[3] His arguments relate entirely to the

---

3

A number of statements in Alexander's motion support his guilty plea. For example, he states that he told Dr. Burris that he was being tortured on the day he made the threatening calls and that he must "have been frustrated that day and I was drunk." He states that after Judge Cummings' secretary angered him, he "got mad" and "lost it"; he claims he was "nice" until the secretary "got [him] mad" and that he "started to drink heavily and that's why I made them threatening calls." He also states that he must have "realized he was threatening people" and that he "snap[ped] out of it" and called the United States Marshal's office and told an officer he was not going to kill anyone.

7

substance of Dr. Burris' competency report and the manner in which she conducted his psychological evaluation.

According to Alexander's statements in his motion, he was provided an opportunity to review Dr. Burris' report and to discuss the report with his attorney. He was represented by counsel at the competency hearing and was provided an opportunity to contest Dr. Burris' findings and recommendations at the hearing. Thereafter, he appeared with his attorney at an arraignment in district court. According to the court's order, the district judge explained the nature of the charges against Alexander and the possible penalties. Alexander was questioned under oath regarding his plea and the district judge found that Alexander entered the plea voluntarily and that he had an understanding of the nature of the charge, the consequences of the plea, and the possible penalties as a result of his plea. Alexander acknowledged the correctness of the district judge's findings with his signature on the same date.

Alexander may disagree with Dr. Burris' findings, but the court records together with Alexander's arguments and factual allegations demonstrate that he understood the proceedings against him. Alexander's allegations regarding Officer Greve demonstrate that he may experience paranoia and delusions and that he may suffer from psychological problems. However, even if the court were to find that Alexander does, in fact, suffer from psychological impairments, such a finding would not lead to a conclusion that he was not competent to enter his guilty plea. "Not all people who have a mental problem are rendered by it legally incompetent." *Bouchillon v. Collins*, 907 F.2d 589, 593 (5th Cir. 1990). The

fact that Alexander alleges a history of psychological disturbances and claims he was subjected to mind control does not change this conclusion. *See McCoy v. Lynaugh*, 874 F.2d 954, 960-61 (5th Cir.1989) (rejecting the petitioner's claim that he was legally incompetent to stand trial because he had a history of psychological illness, had twice tried to commit suicide while awaiting trial, and was subjected to "mind altering drugs"); *see also United States v. Birdsell*, 775 F.2d 645, 648-50 (5th Cir. 1985) (affirming the district court's finding of competency where defendant claimed he was the reincarnation of Confederate General Nathan Bedford Forrest, who was born in 1821 and the first leader of the Ku Klux Klan, and that he committed crimes because he was under instruction to forage for "the cause").

Based on Alexander's own allegations and the records in this case, he had a sufficient ability to consult with his attorney with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings against him. Alexander's statements in his motion support a finding that he understood the charges against him and that he was and is aware of what he did on January 24, 2005, at the time he did it and at the time he entered his plea. He was therefore not incompetent to enter his plea of guilty. *See Dusky*, 362 U.S. at 402.

B. *Claim of Insanity*

Alexander states that "The United States of America convicted me with a felony when I had a mental defect at the time I was tortured." The court construes Alexander's statements as a claim that he was incapacitated at the time he committed the crime for which he was sentenced. Such a claim, however, should not be considered at this

9

juncture. A claim of insanity at the time of a crime is the equivalent of a defense to the merits and must be presented during the underlying proceedings rather than as a ground for attacking the movant's sentence in a § 2255 motion. *Speed v. United States*, 441 F.2d 1106, 1107 (5th Cir. 1971) (a plea of guilty constitutes a waiver of non-jurisdictional defenses).

C. *Claim of Ineffective Assistance of Counsel*

In *Strickland v. Washington*, 466 U.S. 668, 697-88 (1984), the United States Supreme Court articulated a two-part standard for ineffective assistance of counsel claims. The standard requires a showing that (1) counsel's performances fell below an objective standard of reasonableness and (2) the petitioner suffered prejudice as a result of the deficiencies in performance. *Id.* The standard in *Strickland* applies to cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Under the first component, the petitioner must identify acts or omissions that allegedly were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The court must then judge the reasonableness of counsel's alleged deficiencies in context of all the facts of the case and determine whether, in light of the attending circumstances, the alleged deficiencies were outside the range of professionally competent legal assistance. *Id.* To show prejudice under the second component, the petitioner must show that there is a reasonable probability that, but for counsel's unreasonable acts or omissions, he would have proceeded to trial rather than entering a guilty plea. *Hill*, 474 U.S. at 59. If the petitioner fails to make a sufficient showing on either of the two components, the court need not address the other. *Strickland*, 466 U.S. at 697.

Alexander has not made a sufficient showing under either component. He has not alleged that either Sloan or Gunden provided counsel that fell below an objective standard of reasonableness. He has merely alleged that his counsel did not communicate with him as frequently as he wished or deemed necessary. He claims he was incarcerated at the Dickens County Correctional Center for a four-month period after his psychological examination and before he was transferred to Amarillo and that Sloan did not visit him during that time. In regard to Gunden, he claims she visited him in Amarillo two weeks after his transfer but that she did not come to the jail again until the day before his competency hearing.

Alexander has not claimed counsel failed to advise him of his rights related to the matters at issue at the competency hearing. Nor has he alleged that counsel failed to inform and advise him as to the charges against him, the possible punishments that would result from a conviction, or of the consequences of pleading guilty as opposed to proceeding to trial. His claim that counsel visited him infrequently is insufficient to show that counsel acted outside the range of professionally competent legal assistance. Mere brevity or infrequency of consultation with the defendant does not, without more, establish ineffective counsel. *See Carbo v. United States*, 581 F.2d 91, 93 (5th Cir. 1978); *see also O'Neal v. Smith*, 431 F.2d 646, 648 (5th Cir. 1970); *Lahay v. Armontrout*, 974 F.2fd 979, 981 (8th Cir. 1992).

Significantly, Alexander does not claim Gunden failed to advise him as to whether to enter a plea of guilty or proceed to trial. In fact, he claims Gunden advised him

to enter a guilty plea. In determining whether counsel's advice to plead guilty constituted ineffective assistance of counsel, a relevant consideration is whether sufficient evidence exists to support the conviction. *United States v. Sparrow*, 371 F.3d 851, 854 (3rd Cir. 2004); *United States v. Curry*, 344 F. Supp.2d 22, 27 (D.D.C. 2004). Considering all the circumstances in this case, including the statements in Alexander's motion which affirmatively point to his guilt, it cannot be said that Gunden provided counsel that fell below an objective standard of reasonableness. Judicial scrutiny of an attorney's representation of his client is "highly deferential"; "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689. Given the presumption in counsel's favor and Alexander's failure to put forth allegations that would demonstrate unreasonable professional judgment, it must be concluded that the first component of a claim of ineffective assistance of counsel is not satisfied. Turning to the second component, Alexander has not claimed that any of the acts and omissions he alleges resulted in prejudice. He has not alleged that there is a reasonable probability that, but for the alleged acts or omissions of counsel, he would have proceeded to trial rather than entering a guilty plea, and he has not alleged that he would have been absolved of the charges against him if he had proceeded to trial. Alexander has therefore failed to make a showing of prejudice. Because Alexander has failed to show that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result, the district court should reject his ineffective assistance of counsel claim.

## VI. Conclusion

"[T]he judicial system has a great interest in maintaining the finality of guilty pleas ...." *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994) (citing *Hill*, 474 U.S. at 58). Given this interest and based on the foregoing discussion of the issues, evidence, and the law, it is the recommendation of the undersigned United States Magistrate that Alexander's motion brought under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be **DENIED**.

## VII. Instructions for Service

The United States District Clerk is directed to send a file marked copy of this Report and Recommendation to Movant and to each attorney of record by the most efficient means available.

**IT IS SO RECOMMENDED.**

Dated: October 22, 2007.

NANCY M. KOENIG
United States Magistrate Judge

*\* NOTICE OF RIGHT TO OBJECT \**
Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby **NOTIFIED** that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed.R.Civ.P. 5(b), *and* the parties are allowed a three-day service by mail extension, Fed.R.Civ.P. 6(e). Therefore, any objections must be *filed* on or before the fourteenth (14) day after this report and

recommendation is filed. *See* 28 U.S.C. § 636(b); Fed.R.Civ.P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir.1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir.1988).